```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LUDLOW ESSEX PARTNERS LLC, NATHAN        :    17cv2042 (DLC)
HALEGUA and MARTIN D. NEWMAN,            :
                                         :    OPINION AND ORDER
                    Plaintiffs,          :
                                         :
          -v-                            :
                                         :
WELLS FARGO BANK, N.A.,                  :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

For the Plaintiffs:
Christopher R. Clarke
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036

For the Defendant:
Noreen A. Kelly
McGuire Woods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105

Graham H. Claybrook
McGuire Woods LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202

DENISE COTE, District Judge:

Plaintiffs Ludlow Essex Partners LLC ("Ludlow"), and two of its members -- Nathan Halegua ("Halegua") and Martin D. Newman ("Newman") -- bring this action against the defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleging that Wells Fargo was negligent in allowing JGM Global Ventures Inc. ("JGM") to open a "fraudulent" Wells Fargo account, and that this same activity

violates New York's General Business Law § 349.  The defendant
has moved to dismiss the complaint pursuant to Fed. R. Civ. P.
12(b)(6).  For the reasons set forth below, the defendant's
motion is granted.

## BACKGROUND

The following facts are drawn from the complaint and are
construed in favor of the plaintiffs.  See Keiler v. Harlequin
Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014).  Ludlow is a New
York limited liability company.  In November 2015, Ludlow
decided to make distributions to its members, including a
$250,000 distribution to member David Levy ("Levy").  Levy
maintains an email account ("Levy Email Account").

On December 1, 2015, at 9:46 a.m., Ludlow's controller
received an email from the Levy Email Account instructing Ludlow
to wire transfer Levy's distribution to a bank account
maintained by Signature Bank.  At 10:02 a.m., Ludlow's
controller received another email from that same account (the
"phishing email") informing him that the earlier referenced bank
account could not accept wires due to an audit, and to instead
wire Levy's distribution to the JGM Global Ventures Inc. bank
account at Wells Fargo.  On December 14, 2015, Ludlow wired the
distribution to the JGM account at Wells Fargo.  Levy never
received the distribution.

2

Upon learning that Levy had not received his distribution, Halegua contacted a Wells Fargo employee who confirmed that the distribution had been paid to the JGM account, and that $159,247.55 had been withdrawn on December 16, 2015. Wells Fargo returned the remaining $90,752.45 to Ludlow, which Ludlow in turn paid to Levy. Halegua and Newman personally paid Levy the remaining $159,247.55 owed to him as part of his distribution. Ludlow was reimbursed a net total of $52,500 by its insurance company. While Levy was paid the entire amount he was owed, Halegua and Newman are owed $106,747.55.

The plaintiffs filed this action in New York state court on February 22, 2017. Wells Fargo removed the case to this Court pursuant to 28 U.S.C. § 1332 on March 21. The defendant filed a motion to dismiss pursuant to Rule 12(b)(6) on April 4.[1] On April 5, an Order provided the plaintiffs with the option of opposing the motion or filing an amended complaint by April 25. The Order noted that it is "unlikely that plaintiffs will have a

---

[1] The plaintiffs argue that the defendant's motion should be denied as untimely. The parties had previously stipulated to April 3 as the date by which the defendant must respond to the plaintiffs' complaint. On May 17, the defendant -- on consent of the plaintiffs -- filed a letter requesting that the deadline to file its motion to dismiss be extended to April 4, nunc pro tunc. The defendant's request was granted on May 30. Because the plaintiffs consented to the request for an extension nunc pro tunc, they cannot now complain that the defendant's motion was untimely.

further opportunity to amend." No amended complaint was filed. The motion to dismiss became fully submitted on May 19.

## **DISCUSSION**

When deciding a motion to dismiss, a court must "accept all allegations as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler, 751 F.3d at 68; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)). A claim has facial plausibility when "the factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citation omitted). In sum, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

**I.   Negligence**

To establish a prima facie case of negligence under New York law, a plaintiff must show: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof." In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 758 F.3d 202, 210 (2d Cir. 2014) (citation omitted).  "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."  Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 177 (2d Cir. 2013) (citation omitted).  "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts."  Id. (citation omitted).

"[A]s a general matter under New York law, banks and other financial institutions do not owe non-customers a duty to protect them from the intentional torts of their customers."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 118, 126 (2d Cir. 2013) (citation omitted).[2]  The plaintiffs nevertheless

---

[2] The Second Circuit has, on occasion, recognized a narrow

maintain that Wells Fargo owes a general duty of care in opening bank accounts to ensure that such accounts are used only for legitimate purposes. The plaintiffs have summoned no authority to support the existence of this duty. In sum, because Wells Fargo owed no duty of care to the plaintiffs, the plaintiffs' negligence claim is dismissed with prejudice.

**II. New York General Business Law § 349**

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business . . . or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

Conduct is "consumer-oriented" when it has "a broader impact on consumers at large," Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (citation omitted), or

---

exception to this rule where a bank fails to act to safeguard trust funds on deposit in a fiduciary account after receiving "clear evidence" of misappropriation. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006). This exception is inapplicable here.

6

"potentially affects similarly situated consumers." <u>Sykes v. Mel S. Harris & Assocs. LLC</u>, 780 F.3d 70, 84 (2d Cir. 2015) (citation omitted). "Private contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute." <u>Crawford</u>, 758 F.3d at 490 (citation omitted). A misrepresentation is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Cohen v. JP Morgan Chase & Co.</u>, 498 F.3d 111, 126 (2d Cir. 2007) (citation omitted). Finally, while reliance is not an element of a § 349 claim, a plaintiff must show that the defendant's material deceptive act caused the injury. <u>Stutman v. Chemical Bank</u>, 95 N.Y.2d 24, 29 (2000). In other words, there must be a causal "connection between the misrepresentation and some harm from, or failure of, the product." <u>Orlander</u>, 802 F.3d at 302 (citation omitted).

Here, the plaintiffs allege that Wells Fargo engaged in deceptive conduct by incentivizing its employees to "open new accounts without taking proper precautions to make certain that these accounts belonged to <u>bona fide</u> individuals or businesses." While the plaintiffs were not among those consumers affected by the defendant bank's allegedly deceptive practices, the bank's alleged activities plausibly affected the consuming public, including those consumers in whose names bank accounts might be

7

fraudulently opened.

Nevertheless, the plaintiffs have not pleaded that Wells Fargo's deceptive conduct caused their injuries. The plaintiffs' injuries were caused by the individual(s) who sent the phishing email and convinced Ludlow's controller to wire Levy's distribution to the JGM account. In other words, the issue here is not that the JGM account was "fake"; rather, the issue is that the individual(s) who gained access to the Levy Email Account, sent the phishing email, and controlled the Wells Fargo account used the Wells Fargo account to perpetrate fraud. Accordingly, the plaintiffs' § 349 claim is dismissed with prejudice.

**III. Plaintiffs' Request for Leave to Amend**

The plaintiffs seek to avoid dismissal by requesting an additional opportunity to amend their complaint. The plaintiffs have already been afforded an opportunity to amend their complaint, and were warned that it would likely be their final opportunity. Moreover, where, as here, the plaintiff has failed to identify "how the complaint's defects would be cured," denial of a request for leave to amend is proper. <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015) (citation omitted).

**CONCLUSION**

The defendant's April 4, 2017 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendant and close this case.

Dated: New York, New York
July 11, 2017

_____
DENISE COTE
United States District Judge